UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


MELODY PARRY

    Plaintiff,

v.                                                             Case No. 8:06-CV-00804-T-17TBM


OUTBACK STEAKHOUSE OF FLORIDA, INC.,
a Florida corporation, and
OUTBACK STEAKHOUSE INTERNATIONAL,
L.P., a foreign corporation,
    Defendants.
_____/


**ORDER ON MOTION TO DISMISS**


This cause comes before this Court on Defendants', Outback Steakhouse of Florida Inc. (Florida Outback), and Outback Steakhouse International, L.P. (Foreign Outback), Motion to Dismiss (Dkt. 10), filed September 14, 2006, and response thereto (Dkt. 12). For the reasons set forth, Defendants' Motion to Dismiss is **Denied.**


**BACKGROUND**


The facts are accepted as true for the purposes of resolving the pending motion only. Plaintiff has lived in Florida since she was less than one-year-old. While living in Florida, Plaintiff began working for Defendant (Florida Outback) in April of 1989. The Plaintiff worked for Defendant (Florida Outback) for seven to eight years. The Defendant was later transferred to work for the Defendant's subsidiary restaurant (Foreign Outback) in the Cayman Islands. During the entire period that the Plaintiff worked abroad, she maintained her Florida driver license, was a registered Florida voter, and owned a motor vehicle registered in Florida.

During the Plaintiff's last year of employment, she engaged in a consensual relationship with Mr. McDougall, manager for Foreign Outback in the Cayman Islands. Soon thereafter, the Plaintiff terminated the relationship. Subsequently, Mr. McDougall became increasingly hostile to her at and away from work. For example, she received disturbing phone calls and visits from the inebriated Mr. McDougall between twelve at midnight and four in the morning, wherein he would bang on her glass door and yell at her to come back to him. Mr. McDougall also prevented her from taking lucrative shifts and allowed pornographic pictures to be circulated in full view of female employees. Furthermore, Mr. McDougall became physically abusive to the Plaintiff resulting in her receiving a black eye. The Plaintiff claims she was and continues to be sexually harassed because of her decision to terminate the relationship.

As a result of these incidents, the Plaintiff telephoned Defendant's (Florida Outback) Human Resource Department in Florida to inform them of the sexual harassment and hostile environment in the Cayman Islands. Subsequently, Mr. McDougall fired the Plaintiff because he could no longer work with her while she refused to enter into romantic relationship with him. The Plaintiff filed a claim for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C.§2000e, *et seq.*, as amended by the Civil Rights Act of 1991 and the Florida Civil Rights Act of 1992 (FCRA) §760.01, *et seq*.

Plaintiff contends Defendants, Florida Outback and Foreign Outback, are licensed to do business in the State of Florida. It alleges the Defendants constitute an "employer" as defined by 42 U.S.C. §2000e(b) and Florida Statutes §760.02(7) because they are engaged in an industry affecting commerce and have fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. The Plaintiff also alleges both Defendants employed a Florida citizen to work in a foreign country for their corporation or subsidiary. The Defendants filed a motion to dismiss all counts relating to Florida Statutes §760.02, stating that the statute is not authorized to apply extraterritorially to Florida citizens working abroad. In other words, the Defendants contend that the Plaintiff has no standing to file suit under the Florida Civil Rights Act of 1992 under the circumstances of this case.

## STANDARD OF REVIEW

Unless it is certain that the plaintiff cannot recover under the facts, a motion to dismiss for failure to state a claim should not be granted. *Am. Ass'n of People with Disabilities v. Smith*, 227 F. Supp. 2d 1276, 1280 (M.D. Fla. 2002) (citing *Cook & Nichol, Inc. v. Plimsoll Club*, 451 F.2d 505, 506 (5th Cir. 1971); accord *Conley v. Gibson*, 355 U.S. 41, 47-48, 78 S. Ct. 99, 2 L. Ed. 2d 80, 84 (1957). "The Eleventh Circuit has held the standard for surviving a motion to dismiss for failure to state a claim is exceedingly low." *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, (11th Cir. 1983); *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 450 F.3d 1257, 1262 (11th Cir. 2006). The Supreme Court has stated all allegations in a complaint must be accepted as true when a court evaluates whether a complaint has presented sufficient facts to overcome a motion of dismissal. *Hishon v. King & Spalding*, 467 U.S. 69, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984). The facts should be viewed in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974), abrogated on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

## DISCUSSION

No Florida Court has examined the issue of whether the Florida Civil Rights Act of 1992 protections against invidious discrimination perpetrated against Florida citizens, can be applied extraterritorially.[1] "Where there is doubt in the interpretation of state law, a federal court may certify the question to the State Supreme Court to avoid making unnecessary *Erie* guesses and to offer the state court the opportunity to interpret or change existing law."[2] *Tobin v. Mich. Mut. Ins. Co.*, 398 F.3d 1267,1274 (11th Cir. 2005). Unfortunately, the Florida Supreme Court does not have jurisdiction to review a question of law certified by a federal district court. *Am. Ass'n of People with Disabilities v. Smith*, 227 F. Supp. 2d 1276, 1284 (M.D. Fla. 2002) (explaining that

---

[1] Both parties agree there is no case on point on this issue and the Court has failed to find a case on point.
[2] This Court believes this issue is of great importance for Florida corporations and Florida citizens.

the Supreme Courts jurisdiction arises from reviewing questions of law "certified by the Supreme Court of the United States or a United States Court of Appeals which is determinative of the cause and for which there is no controlling precedent of the supreme court of Florida"). Therefore, this Court has no choice but to determine this question of law. When analyzing a statutory provision, this Court must first analyze whether it is clear that the Florida Civil Right Act of 1992 can apply extraterritorially to Florida citizens working abroad. *Starr Tyme, Inc, v. Cohen*, 659 So.2d 1064, 1067 (Fla. 1995); *City of Miami Beach v. Galbut*, 626 So.2d 192, 193 (Fla. 1993) (explaining that when the statute is clear a court should not look behind the statute's legislative intent). If this Court finds the statute to be ambiguous, then the Court must interpret the statute's provision.

**I. Analyzing whether the Statute is clear and unambiguous**

Defendants assert that the Florida Civil Rights Act of 1992 provides no protection for alleged unlawful acts occurring outside the State of Florida or the territory of the United States because the purpose of the Florida Civil Rights Act of 1992 is only to secure "*all individuals within the state from discrimination*". Fla. Stat. §760.01(2). As a result, the statute should be read, as clear and unambiguous, that the statute is meant to only protect individuals inside the state of Florida from invidious discrimination.

The Plaintiff, on the other hand, cites to case law that asserts that the Florida Civil rights Act of 1992 is clear and unambiguous that there is no geographical limitation provision on the face of the statute. *Mousa v. Lauda Air Luftfahrt, A.G.*, 258 F. Supp. 2d 1329, 1341(S.D. Fla. 2003) (concluding its opinion by interpreting *Sinclair v. Dejay Corp.*, 170 F.3d 1045 (11th Cir. 1999). As a result, the statute should be read, as clear and unambiguous, that it should apply extraterritorially to Florida citizens.

This Court finds both parties have presented persuasive arguments and the illustrated statute can be interpreted to have different meanings. Accordingly, this Court must hold the statute to be ambiguous. Therefore, this Court must look at legislative intent when deciding whether the Florida Civil Rights Act of 1992 can apply to Florida citizens working abroad.

**II. Interpreting the Florida Civil Rights Act of 1992**

When interpreting a statutory provision, the fundamental objective is to interpret the provision in a manner that fulfills the intent of the drafters. *State ex rel. Dade County v. Dickinson*, 230 So. 2d 130, 135 (Fla. 1969). The interpretation of a statute demands less flexibility than an interpretation of a constitutional provision. *Coastal Florida Police Benev. Ass'n, Inc. v. Williams*, 838 So. 2d 543, 549 (Fla. 2003). A prerequisite to judicial construction is ambiguity. *Florida League of Cities v. Smith*, 607 So. 2d 397, 400 (Fla. 1992). "[The] term 'ambiguity', for purposes of statutory analysis, leaves reader with at least two, apparently inconsistent alternatives, each of which, taken alone, seems free of ambiguity and appears to be meaningful." *Dombrowski v. Swiftships, Inc.,* 864 F.Supp. 1242, 1247 (S.D. Fla. 1994). If a provision is ambiguous, Florida Courts look at factors[3] that inhere to the state's experience, "such as the express language of the constitutional provision, its formative history, both preexisting and developing state law, evolving customs, traditions and attitudes within the state, [the] state's own general history, and finally any external influences that may have shaped state law." *Mozo v. State*, 632 So. 2d 623, 630 (4th DCA 1994), *rev'g* 640 So. 2d 1108, (Fla. 1994), *remanded on other grounds* 655 So. 2d 1115 (Fla. 1995), (quoting *Traylor v. State*, 596 So. 2d 957, 962 (Fla. 1992)). "If a constitutional provision could have more than one meaning and the Legislature has adopted one meaning by enacting a statute, the Legislature's interpretation is persuasive, if not controlling." *Greater Loretta Imp. Ass'n v. State ex rel. Boone*, 234 So. 2d 665, 669 (Fla. 1970).

"The Florida Civil Rights Act of 1992 shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section." Fla. Stat. 760.01(3). The framers intended the Florida Civil Rights Act of 1992 "to effectuate the purpose [of]… Title VII of the Civil Rights Act of 1964." *Joshua v. City of Gainesville*, 768 So. 2d 432 (Fla. 2000) (explaining general purposes of the act includes securing freedom from discrimination for all individuals and preserving the general welfare of all). Title VII of 1964, amended in 1991, extends to American citizens working in foreign countries. 42 U.S.C. §2000e-1(2000); *See also Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp 2d 59 (D.D.C 2002). Since the Florida Civil Rights Act of 1992 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.S. § 2000e et seq., mirror one another, Florida courts look at federal case law construing

---

[3] These factors were used to interpret an ambiguity in a constitutional provision. Nevertheless, these same factors can be just as useful when interpreting an ambiguity in a statute.

or interpreting Title VII. *Benitez v. Computer Horizons Corp.*, 2005 U.S. Dist. LEXIS 31162 (M.D. Fla. 2005). As a result, this Court, when possible, should construe both statutes to be aligned with one another.

Defendants assert that unlike Title VII of the Civil Rights Act of 1964 as amended, there is no express statutory language or formative history for this Court to conclude that the Florida Civil Rights Act of 1992 should apply to Florida citizens working abroad. This Court disagrees with this argument. Omissions of express provisions or formative history do not preclude a Court from taking into account the intent of the legislature. In this case, Florida cases have expressed the legislative intent to protect Florida citizens from Florida employers and their subsidiaries. Moreover, the Florida Civil Rights Act was intended to mirror Title VII Civil Rights Act of 1964 as amended. Because Florida case law has reinforced that Title VII Civil Right Act of 1964 and the Florida Civil Rights Act of 1992 should essentially mirror one another when possible this Court holds that the statute should apply extraterritorially to Florida citizens working abroad.[4] Accordingly, it is

**ORDERED** that the Defendants' Motion to Dismiss Count I and II (Dkt. 10) be **DENIED** and the Defendants shall file an answer to counts I and II of the complaint within ten (10) days from the date of this order.

**DONE AND ORDERED** in Chambers in Tampa, Florida, this 11th day of October 2006.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies: All parties and counsel of record

---

[4] This decision does not hold that Florida Civil Rights Act of 1992 and Title VII of the Civil Rights Act 1964, as amended in 1991, must always align with one another. For example, Title VII has a provision to extend in the limited circumstances right to foreign citizens abroad. However, the Florida Civil Rights Act of 1992 does not have such a provision.